# In the United States Court of Federal Claims

No. 05-1043C
(Filed May 7, 2014)

```
* * * * * * * * * * * * * * * * * * * * * *
                                          *
JORGE A. DELPIN APONTE, et al.,*
                                          *
                  Plaintiffs,             *
                                          *
        v.                                *
                                          *
THE UNITED STATES,                        *
                                          *
                  Defendant.              *
                                          *
* * * * * * * * * * * * * * * * * * * * * *
```

United States Postal Service (USPS);
Fair Labor Standards Act (FLSA), 29
 U.S.C. § 207(a)(1) (overtime
compensation); Territorial Cost of
Living Adjustment (TCOLA); Regular
Rate; RCFC 56.

*Santiago F. Lampón*, Lampón & Associates, San Juan, Puerto Rico, for plaintiffs.

*Paul Davis Oliver*, Commercial Litigation Branch, Civil Division, United States Department of Justice, with whom were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Todd M. Hughes*, Deputy Director, all of Washington, D.C., for defendant.  *David B. Ellis*, United States Postal Service, Washington, D.C., of counsel.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Plaintiffs in this case are 278 current and former employees of the United States Postal Service (USPS), residing in the Commonwealth of Puerto Rico.  They allege that the USPS did not pay them sufficient overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219.  Pending before the Court are plaintiffs' motion for partial summary judgment and defendant's cross-motion for summary judgment, brought under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC).

The FLSA requires that when covered employees work more than forty hours in a workweek, they must receive overtime compensation at a rate of at least one and one-half times their regular rate of pay.  29 U.S.C. § 207(a)(1).  Plaintiffs argue

that payroll records, which the parties agree are typical and representative, show that the USPS fails to pay adequate overtime compensation.  Plaintiffs base their argument on the absence of specific line items stating that the employee was paid for particular hours of overtime worked at a rate of one and one-half times the regular rate, and on plaintiffs' calculations of what the total compensation should have been for each week.  Plaintiffs' case, in essence, rests on the failure of the USPS to identify specific hours worked as the ones that exceeded forty in a workweek, and to clearly show pay attributable to those particular hours as being one and one-half times the employee's regular rate of pay.

Defendant contends that the formula used by the USPS not only pays the amount of overtime compensation due under the FLSA, but also adds an additional amount reflecting the contribution of the Territorial Cost of Living Adjustment (TCOLA) to the regular rate calculation, gratuitously following the Ninth Circuit's decision in *Frank v. McQuigg*, 950 F.2d 590, 594 (9th Cir. 1991).  Defendant argues that this formula conforms to the FLSA as interpreted by the Department of Labor (DOL).

The payroll records identified as typical show that the USPS has followed its stated formula in calculating overtime compensation as one and one-half times the regular rate plus a TCOLA add-on.  This formula is the most reasonable interpretation of the FLSA.  For these reasons, and as explained below, the Court **GRANTS** defendant's cross-motion for summary judgment and **DENIES** plaintiffs' motion for partial summary judgment.

## I. BACKGROUND

Plaintiffs in this class action lawsuit seek to establish that the USPS has underpaid its employees in Puerto Rico for their overtime hours worked.  As is recounted below, the matter was transferred to our Court from a federal district court, because the amount sought exceeded the Little Tucker Act ceiling.  *See Delpin Aponte v. United States*, 83 Fed. Cl. 80, 86 (2008).

## A. Jurisdiction

The Court's jurisdiction over the subject matter of this case is not disputed.[1]  The FLSA is a money-mandating statute, *see Zumerling v. Devine*, 769 F.2d 745, 748

---

[1]  Defendant moved, without opposition, to dismiss any claims in the Amended Complaint seeking interest or retirement pay, and these claims were accordingly dismissed as beyond our jurisdiction.  Order (June 12, 2007); *see also* Tr. (June 12, 2007) at 104–05.

(Fed. Cir. 1985), and claims based on it may be brought in our Court due to the Tucker Act's waiver of sovereign immunity, 28 U.S.C. § 1491(a)(1). *See Zumerling*, 769 F.2d at 748 (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)); *Abbey v. United States*, No. 13-5009, 2014 WL 1099571, at *4–7 (Fed. Cir. Mar. 21, 2014).

## B. Procedural History[2]

This lawsuit was originally filed in the United States District Court for the District of Puerto Rico on May 24, 2002. Complaint, *Delpin Aponte v. Potter*, No. 02-1787 (D.P.R. filed May 24, 2002). The original complaint alleged that the USPS improperly calculated overtime pay by multiplying the base or basic rate, rather than the regular rate, by one and one-half for each overtime hour worked. *Id.* ¶ 18. The plaintiffs also alleged that the TCOLA adjustment to overtime pay that the USPS made for employees located in Alaska and Hawaii, presumably to comply with *McQuigg*, was not made for employees located in Puerto Rico. *See id.* ¶ 19. As is explained in more detail below, while the matter was pending in the district court, several motions were granted to add additional plaintiffs, and written consent forms were filed for nearly all of them. *See also Delpin Aponte*, 83 Fed. Cl. at 85. The government ultimately moved to dismiss the case for lack of jurisdiction and the plaintiffs apparently did not dispute that their case was within our exclusive jurisdiction under the Tucker Act. *See* Order, *Delpin Aponte v. Potter*, No. 02-1787 (June 15, 2005) at 1. Accordingly, the district court transferred the case to our court. *Id.* at 2–3.

After transfer, the plaintiffs filed an initial amended complaint identical in all material respects to what remained of the original.[3] While specific allegations focused on the interaction of the TCOLA with overtime compensation, *see* Am. Comp. ¶¶ 17, 28–30, 34, the plaintiffs also more broadly alleged that their overtime hours were not compensated at one and one-half times their regular rates due to the use of basic rates in the calculations, *see id.* ¶¶ 15–16, 18, 34. After conducting discovery concerning the formula used by the USPS to calculate overtime and other pay, the plaintiffs concluded that the USPS was underpaying employees for overtime throughout the postal system and moved for leave to file a *second* amended

---

[2] Only the aspects of the procedural history relevant to the motions under consideration are discussed in this section. A more detailed discussion of the prior history is contained in an earlier opinion. *See Delpin Aponte*, 83 Fed. Cl. at 85-88.

[3] Conjugal partners and partnerships, initially included among the parties, had been dismissed by the district court as unnecessary, and employment discrimination and pension claims were voluntarily dismissed. *See Delpin Aponte*, 83 Fed. Cl. at 85 n.10.

complaint. *See Delpin Aponte*, 83 Fed. Cl. at 86–88. The motion was partly granted and partly denied. *Id.* at 81, 89–93. The Court granted the plaintiffs' request to include more general allegations of FLSA violations, *id.* at 89–91, and denied their request to broaden the potential class of plaintiffs to include USPS employees outside of Puerto Rico, *id.* at 91–93.[4]

In the course of ruling on the motion for leave to further amend the complaint, the Court explained at length the difference between using a *marginal* approach to overtime hours as opposed to an *aggregate* approach. *See id.* at 82–85. Under the former, the compensation earned for each specific hour worked beyond the fortieth would be the basis for determining whether the "one and one-half times the regular rate" requirement of the FLSA was met. *See* 29 U.S.C. § 207(a)(1) (2012). One problem with such an approach is that when premium rates are earned for reasons other than working overtime, two employees who work the same number of hours at the same non-overtime rates could receive different amounts of overtime compensation, depending on when in the week the premium hours were worked --- as an employee whose premium pay was earned after the fortieth hour would have a smaller gap in his hourly pay to be made up between what he otherwise earned for those hours and the time-and-a-half standard, compared to an employee whose premium hours were at the beginning of the week. *See Delpin Aponte*, 83 Fed. Cl. at 82. The Supreme Court long ago recognized that "[s]uch a variation in the amount of statutory excess compensation would not be in accord with the statutory purpose." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 477 n.34 (1948). This problem is avoided under the aggregate approach, adopted by the government, in which all relevant compensation is added together and divided by hours worked to determine the regular rate of pay for each and every hour, with only the "one-half times the regular rate" left to be added, to the extent more than forty hours were worked. *See Delpin Aponte*, 83 Fed. Cl. at 82–83. The plaintiffs were informed of the existence of precedents upholding the aggregate approach, with which they would need to deal were they to challenge the legality of that approach. *Id.* at 83, 91.

The plaintiffs have moved for partial summary judgment, contending that they are entitled to a liability determination in their favor. Pls.' Mot. for Partial Summ. J. (Pls.' Mot.) at 2, 24, ECF No. 117. Plaintiffs argue that official USPS payroll records show that they are paid less than one and one-half times the regular rate for overtime hours worked, *id.* at 11–23, and base this in part on what they

---

[4] The plaintiffs never filed a second amended complaint, perhaps because allegations in the current complaint were already general enough to include the failure of the USPS to pay overtime at one and one-half times an employee's regular rate. *See* Am. Comp. ¶¶ 15–16, 18, 34.

contend is a concession by the government's RCFC 30(b)(6) deponent, *id.* at 14. The plaintiffs also rely on a report by the person whose expert testimony they would offer were there to be a trial, which purports to show that the formula used by the USPS to calculate overtime pay undercompensates the plaintiffs due to its use of a basic rate of pay connected with overtime hours. *See* Pls.' Resp. to Def.'s Renewed Mot. for Summ. J. (Pls.' Reply) at 21–24, ECF No. 143; *id.* Ex. (report of J. del Valle), ECF No. 143-1.

In the government's cross-motion, it contends that the plaintiffs are misrepresenting or misunderstanding the payroll records, and inaccurately characterizing the deposition testimony. *See* Def.'s Renewed Mot. for Summ. J. (Def.'s Mot.) at 1–4, 11–16, ECF No. 126. Defendant argues that the payroll records show that the USPS not only pays the plaintiffs what the FLSA requires for their overtime work, but exceeds this amount by adding to it the TCOLA portion of the regular rate per *McQuigg*. *Id.* at 12–18; *see also* Def.'s Reply Br. in Supp. of Renewed Mot. (Def.'s Reply) at 4–5, ECF No. 146.

After oral argument was held, the Court requested supplemental briefing on the applicability of 29 C.F.R. § 778.207(a) and the level of deference to be given interpretative rules, which the parties filed. *See* Def.'s Supp'l Br., ECF No. 158; Mot. [sic] on Add'l Brf'g (Pls.' Supp'l Br.), ECF No. 161. After the government brought additional authority to the Court's attention, *see* Notice of Supp'l Authority, ECF No. 180, the plaintiffs were provided the opportunity to respond, which was taken, *see* Pls.' Notice of Add'l Auths., ECF No. 186.

## C. The Plaintiffs

The caption of the complaint filed in the district court contained twenty-one plaintiffs, eight of whom were spouses.[5] Of the thirteen current or retired USPS employees, only twelve were identified in the complaint (Alberto Ortiz Torres was omitted). A motion filed January 29, 2003, sought to add 159 additional employees to the suit. A second motion filed that same day sought to add another plaintiff. Two motions filed on February 5, 2003, sought to add nineteen employees, plus eleven spouses, to the suit (although one employee and his spouse were already named plaintiffs). A fifth motion, filed February 7, 2003, listed four additional employees (and one spouse), including one which appeared to be a corrected spelling of the surname of an employee from the fourth motion (Edna Rijos, rather than Rios). All told, 194 USPS employees were identified as parties in the district court,

---

[5] For a more detailed discussion of the subject of this paragraph, including citations to the relevant docket entries in the district court case, see *Delpin Aponte*, 83 Fed. Cl. at 85.

but written consents were apparently filed for only 192 of them (no form is found for Amalia Lopez Santiago or Jesus E. Adorno).

The amended complaint filed in our Court on February 24, 2006 contains an attached list of 173 plaintiffs, although one plaintiff seems to appear twice (number 12 is Jose L. Otero, and number 84 is Jose Luis Otero).  *See* Am. Compl. Attach. at 1,4.  Although there are discrepancies due to misspellings and the addition, deletion, or reordering of family names for 24 of the plaintiffs, all but one seem to correspond to already-submitted consent forms (that one being the aforementioned Amalia Lopez Santiago).  Twenty-one USPS workers who were already plaintiffs to the suit, due to their consent forms having been filed in the district court, were omitted from the amended complaint.

A motion for leave to file a second amended complaint was accompanied by a proposed second amended complaint, which listed 199 plaintiffs in an attachment. *See* Am. Mot. for Leave to File Ex. 1 at 13–17, ECF No. 105.  All 172 plaintiffs from the first amended complaint were included in this list, although there were discrepancies for 21 of these (in many cases correcting names to correspond to the consent forms).  Of the 192 USPS employees whose consent forms were filed in the district court, all but two were included in the proposed second amended complaint (the omitted individuals were Nancy E. Rosa and Nancy M. Romero).  Of the nine listed plaintiffs for whom no consent form was on file, two were new names to the proceedings (Carlos Ramos Salgado and Arshilla), and as many as five appeared to represent duplicate listings of individuals with filed consent forms.[6]

The plaintiffs were given leave to file a second amended complaint, which could more generally allege that the proper amount of overtime compensation required by the FLSA was not being paid by USPS to its employees in Puerto Rico, but which would not broaden the potential class of current and former postal workers beyond those located in the Commonwealth.  *Delpin Aponte*, 83 Fed. Cl. at 91–93.  No second amended complaint was filed.  Plaintiffs instead filed five separate motions -- accompanied by written consent forms -- to add additional plaintiffs to the FLSA collective action.  These were granted without opposition.  The first motion concerned a list of eighty-one postal employees.  *See* Mot. to Join Additional Pls., ECF No. 152.  Of this list, two individuals were already parties to the suit (Hydee Cintron and Joe Curet).  The second motion concerned three employees, including one who had been added to the case by the prior motion.  *See* Mot. to Join Additional Pls., ECF No. 156.  The third motion involved just one

---

[6]  These five were Felix Santos Ortiz (form on file is for Santos Felix Ortiz), Gloria W. Gonzalez (Gloria M. Gonzalez), Ivan Camacho (Juan Camacho), Jose Curet Lopez (Joe Curet Lopez), and Edwin Berrios (Sol Edwin Berrios).

individual, who was already added via the second motion. *See* Mot. to Join Additional Pls. [sic], ECF No. 166. The fourth and fifth motions added one and four additional employees, respectively. *See* Mot. to Join Additional Pl., ECF No. 171; Mot. (Under Seal) to Join Four Additional Pls., ECF No. 172. Thus, these motions added a total of eighty-six plaintiffs to this lawsuit.

In sum, following the requirement of 29 U.S.C. §§ 216(b) and 256(b) that individual claimants do not join FLSA collective actions until written consent is filed with the Court, there are a total of 278 plaintiffs currently before the Court: the 192 for whom written consent forms were filed in the district court, and the 86 additional individuals whose written consent forms were filed in this Court. The Court concludes that although plaintiffs' counsel failed to file a second amended complaint, and omitted the names of some employees who already joined the action in the district court, these actions do not dismiss from the case individuals whose written consent forms have already been filed. But to the extent that putative plaintiffs' written consent forms have not been filed with either court, those individuals cannot be considered parties.

## D. The Fair Labor Standards Act

The 278 plaintiffs allege that the USPS underpaid overtime benefits to postal employees in the Commonwealth of Puerto Rico. Am. Compl. ¶ 1. The basis for plaintiffs' claim is that the "USPS has always calculated the Overtime Rate paying 1 ½ times the Basic Rate instead of 1 ½ times the Regular Rate." *Id.* ¶ 16. Although the complaint contained allegations concerning defendant's failure to add to overtime payments the TCOLA premium resulting from *McQuigg*, *id.* ¶¶ 28–30, 34, that claim is no longer pressed by the plaintiffs --- as their papers contain no criticism of the USPS formula used to calculate this premium, and their own calculations regarding overtime pay employ the same TCOLA premium amounts as are produced by the USPS formula. *See, e.g.*, Pls.' Prop. Findings Ex. 5 (Pls.' Ex. 5), at 8, ECF No. 118-5 (plaintiffs' economist using $12.99 and $10.07 as payments due to TCOLA premiums).[7] In any event, as will be seen below, it is clear that the formula used by the USPS to calculate the TCOLA premium mirrors the approach mandated within the Ninth Circuit by *McQuigg*. Moreover, the plaintiffs have no quarrel with the manner in which the USPS calculates the regular rates of their pay.

---

[7] These amounts correspond exactly to the results of the formula employed by the USPS. *See* Def.'s Mot. Attach. D at 10, ECF No. 126-4. For example, in the second week of the pay period considered, the TCOLA for that week's work was $77.94, which when divided by the hours worked (48) results in a TCOLA contribution to the regular rate of $1.624 per hour. This TCOLA contribution, multiplied by hours worked in excess of forty (eight), comes to a $12.99 TCOLA premium.

*See* Pls.' Mot. at 8, ECF No. 117 (explaining "this case is not about the way the Defendant computes the regular rate of pay"); Pls.' Ex. 5 at 2, ECF No. 118-5 (economist not disputing regular rate calculation).  The case turns entirely on how the regular rate is used by the USPS to calculate overtime pay under the FLSA --- and in particular, whether the plaintiffs are fully receiving the "one" part of the "one and one-half times the regular rate" requirement.

In relevant part, the FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours[,] unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1) (2012).  Before considering the merits of the respective parties' positions, a brief review of the overtime pay provisions of the FLSA is in order.

### 1. Regular Rate and Overtime Pay Under the FLSA

When the FLSA was first enacted, it "contain[ed] no definition of regular rate of pay and no rule for its determination."  *Bay Ridge*, 334 U.S. at 460.  Did this mean the rate of pay usually received for working a particular hour if it were not an overtime one?  Or was this an average rate of pay, considering all hours worked (or all non-overtime hours worked)?  And once the regular rate was determined, how was it to be applied to the hours worked to ensure employees are paid their time-and-a-half?  Considering these questions, the Supreme Court concluded "that Congress intended the regular rate of pay to be found by dividing the weekly compensation by the hours worked unless the compensation paid to the employee contains some amount that represents an overtime premium."  *Id.* at 464.  The Supreme Court held that an overtime premium, based on exceeding a certain number of hours in a day or week, was not included in the regular rate to avoid "a pyramiding," but that higher rates paid for working disagreeable or Sunday shifts were included.  *Id.* at 464–71.  The excluded overtime premium would instead "be credited against any obligation to pay statutory excess compensation," even if it was earned "for work during the first forty hours of the workweek."  *Id.* at 464–65.

The argument was rejected that regular rates must be based on only the compensation received in the first forty hours worked, as this "method of computation would give an improperly weighted average for the rate of pay for the entire week" when employees received non-overtime premiums for "work after 40 hours of work."  *Id.* at 471 n.29.  And the Supreme Court found the interpretation of the Administrator of the Wage and Hour Division of DOL to be reasonable, in which:

> an employer may credit himself with an amount equal to *the number of hours worked in excess of forty multiplied by the regular rate of pay for*

*the entire week* rather than an amount equal to the number of hours worked in excess of forty multiplied by the average rate of pay for those excess hours.  Under that formula each [employee] is entitled, as statutory excess compensation, to *an additional sum equal to the number of hours worked for one employer in a workweek in excess of forty, multiplied by one-half the regular rate of pay.*

*Id.* at 476 (emphasis added).

In the decades since the Supreme Court issued its *Bay Ridge* opinion, the overtime provisions of the FLSA have been amended numerous times, with Congress adding additional details that reflect or at least are consistent with the Supreme Court's interpretation of the original version of the act (with some refinements).  The term "regular rate" is now defined based on what is included or excluded from its calculation.  The regular rate is "deemed to include all remuneration for employment paid to, or on behalf of, the employee," with several enumerated exceptions.  29 U.S.C. § 207(e) (2012).  Not included are gifts, payments when no work is performed (such as vacation or sick leave), and certain other fringe or discretionary benefits.  *See* 29 U.S.C. § 207(e)(1)–(4),(8).  Following *Bay Ridge*, excluded from the regular rate are the various forms of overtime premiums, which are described as "extra compensation provided by a premium rate paid for certain hours worked" in excess of daily or weekly limits.  29 U.S.C. § 207(e)(5).  Also excluded are premiums for working weekends or holidays, or shifts outside the normal workday or workweek, when the premium is fifty percent or more of the rate that would otherwise apply.  29 U.S.C. § 207(e)(6)–(7).  The "extra compensation" from the excluded premium portions of these rates is treated as the overtime premiums were in *Bay Ridge*, 334 U.S. at 464–65, and credited toward the extra amounts due under the FLSA: "Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section."  29 U.S.C. § 207(h)(2) (2012).[8]

Thus, the statute as now written clearly bases the regular rate on an average of compensation that can include premium payments received for reasons other than working overtime, and includes compensation received for overtime hours --- to the extent the latter is stripped of the "extra compensation provided by a premium rate."  29 U.S.C. § 207(e)(5) (2012).  This tracks *Bay Ridge*, as being based on an average of compensation for all hours worked, rather than just the first forty or just those worked beyond forty.  But the statute remains silent concerning the approach to

---

[8]  This is in contrast to the other excluded sums, which "shall not be creditable toward . . . overtime compensation required under this section."  29 U.S.C. § 207(h)(1) (2012).

overtime compensation that the Supreme Court found reasonable in that case, in which the regular rate of pay is assumed to have been received for each hour worked, leaving the employer with but the obligation to add one-half times that rate in pay for the number of hours worked above forty. *See Bay Ridge*, 334 U.S. at 476.

That approach, however, has been followed by the federal agencies administering the FLSA. The Office of Personnel Management, responsible for administering the act for most federal employees, 29 U.S.C. § 204(f), most explicitly follows the approach discussed in *Bay Ridge*, calculating "[a]n employee's overtime entitlement" as including: "(1) The straight time rate of pay times all overtime hours worked; plus (2) One-half times the employee's hourly regular rate of pay times all overtime hours worked." 5 C.F.R. § 551.512(a) (2013). What the Court has previously described as the "aggregate" approach, *see Delpin Aponte*, 83 Fed. Cl. at 82–83, appears to be employed, as an employee will receive an additional one-half times the regular rate per hour worked above forty, regardless of any (non-overtime, of course) premiums or differentials received above the basic pay amount for these hours. *See* 5 C.F.R. § 551.512(b).

The DOL, which administers the FLSA for the private sector and some federal employees, including those of the USPS, *see* 29 U.S.C. §§ 204(a),(f), 216(c), follows this same approach, albeit in a less direct manner. In its interpretative rules, the DOL reprints the FLSA subsections defining the regular rate and allowing excluded premiums to be credited toward overtime payments. 29 C.F.R. § 778.200(a)–(b) (quoting 29 U.S.C. § 207(e),(h)). Other rules explain the application of these provisions, underscoring that the regular rate includes payments for overtime minus any overtime premium (in other words, at the basic rate), and excludes certain other premiums that are at least fifty percent of the basic rate --- and explaining that these excluded premiums are credited toward the overtime compensation requirements. *See* 29 C.F.R. §§ 778.201–.207. While no rule explicitly states that employees generally are to receive for overtime hours the sum of the basic (or straight time) rate of pay for those hours plus one-half times the regular rate for each of them, a number of illustrations are provided showing that after calculating the regular rate, adding the product of one-half of this rate and the number of hours above forty satisfies the FLSA. *See, e.g.*, 29 C.F.R. §§ 778.110(b), 778.111, 778.112, 778.118, 778.311, 778.313(b).

Although none of the examples provided involves non-overtime premium rates that are included in the regular rate (such as night differentials, or Sunday premiums that are less than fifty percent), the most elementary example of an hourly rate and a production bonus demonstrates the DOL approach. *See* 29 C.F.R. § 778.110(b). If an employee works 46 hours in a week at a flat $12 hourly rate, and also receives a production bonus of $46, his total compensation for regular rate

purposes is $552 (based on the hourly rate) plus the $46 bonus, or $598. Dividing total compensation by the 46 hours worked results in a regular rate of $13 per hour. Under the DOL rule, an additional $39 is owed the employee for the six overtime hours, based on one-half of the regular rate ($6.50 per hour). *Id*. This calculation is expressed as assuming that the employee has been paid at the regular rate of $13 for all 46 hours worked, although the actual rate of pay for each was the basic rate of $12. *See id*. The DOL rule, thus, follows the aggregate approach.

### 2. The Inclusion of TCOLA in the Regular Rate

As we have just seen, both federal agencies which administer the FLSA follow the same approach concerning the use of the regular rate in calculating overtime pay. Much of this approach is dictated by the FLSA overtime provisions themselves. Since the regular rate is a *rate*, to make it hourly one must take all of the compensation collected for hours worked and divide by the number of those hours. This compensation may include several different premiums, but not any overtime premiums associated with any hours. 29 U.S.C. § 207(e)(5). Thus, to the extent part of the pay earned for working a particular hour is an overtime premium dictated by something other than the FLSA, that part is not included in the regular rate --- but all other payments for that hour, namely the basic rate and any other premium (except for certain premiums of at least fifty percent, *see* 29 U.S.C. § 207(e)(6)–(7), which are immaterial for our purposes) *are* a part of the regular rate calculation. Since all hours worked are the basis for the regular rate, *see* 29 U.S.C. § 207(e)(2) (excluding compensation for hours not worked), it is composed of and influenced by (non-overtime) premiums received for any hour of a week, regardless of whether it was before or after the forty hour mark was reached. The regular rate is an average rate, and thus whenever there are premiums, differentials, or bonuses and the like received by an employee, this rate may well differ from the actual rate paid for any hour worked. All of the above necessarily flows from the regular rate being based on all remuneration received for work performed in a week (minus the exclusions), as opposed to, say, based on what the rate of pay would otherwise be for working a particular hour were it not an overtime one. The FLSA expressly rejects the marginal approach in the determination of the regular rate.

Both OPM and DOL also reject the marginal approach in applying the regular rate to determine overtime compensation owed. They do not require employers to identify the particular hours worked after the fortieth and to add to an employee's compensation the difference between one and one-half times the regular rate and the compensation otherwise received for those hours --- which would favor employees who worked at premium rates at the beginning of the week over employees who worked them at the end of the week. *See Bay Ridge*, 334 U.S. at 476 n.34 (criticizing such a variation in overtime pay). The agencies' approach is on its face reasonable,

and has been found to be uncontroversial.  It appears reasonable, since the FLSA itself abandons the marginal approach in allowing certain premiums to be credited toward the overtime payment without regard to whether the hours for which they were earned were among the first forty worked or later.  29 U.S.C. § 207(h)(2).  And this approach has been upheld in all known court challenges.  *See, e.g., Zumerling*, 769 F.2d at 752–53; *Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 268 (5th Cir. 2000); *Wisnewski v. Champion Healthcare Corp.*, No. Civ. A3-96-72, 2000 WL 1474414, at *7–8  (D.N.D. 2000), *aff'd sub nom. Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 726 (8th Cir. 2001); *Brooks v. Weinberger*, 730 F. Supp. 1132, 1138–41 (D.D.C. 1989).  As the Court explained earlier, *see Delpin Aponte*, 83 Fed. Cl. at 83, the aggregate approach rests on the tautology that since the regular rate is the average compensation (except for overtime premiums) received for hours worked in a week, its very calculation means that one times the regular rate has been paid for each and every hour worked --- including the overtime ones.

It seems the one precedent which has not fully embraced the OPM/DOL approach was the Ninth Circuit's decision in *Frank v. McQuigg*, 950 F.2d 590 (9th Cir. 1990), concerning the treatment of the TCOLA earned by USPS employees in Alaska.  The TCOLA is a living allowance granted to employees working in certain geographic locations and is calculated as a percentage of an employee's salary or wages.  5 U.S.C. § 5941; 39 U.S.C. § 1005(b) (1988).  In *McQuigg*, it was not disputed that the TCOLA was part of the regular rate calculation, and thus increased the size of the employees' overtime premium.  *McQuigg*, 950 F.2d at 593.  What was at issue was the USPS practice of adding to employees' pay just one-half times the regular rate for the number of overtime hours worked, which would satisfy the FLSA only if it was proper to assume that employees were already paid once times the regular rate for all hours worked.  *See id.* at 595–96.  While the Ninth Circuit found this assumption proper for the overtime hours worked, *id.* at 595, it found the approach underpaid the USPS Alaska employees for *the first forty hours* they worked, since the TCOLA could be earned only during those hours, *id.* at 596–97.  By reducing the pay allocated to those particular hours below the sum of the base rate of pay and the TCOLA --- by averaging it over a greater number of hours, where the overtime hours contributed just the base rate of pay to the numerator --- the USPS was found to be illegally prorating or diluting the TCOLA payments.  *Id.*  This approach was rejected, because an employee who worked just forty hours would receive the entire TCOLA for those hours, while an employee who worked more than that would have some of the TCOLA spread out to pay for overtime compensation, and thus would get less pay for the first forty hours.  *Id.* at 597.

Whatever one thinks of *McQuigg*, a few important points must be kept in mind.  First, the opinion considered a simplified example of the regular rate, in which no premium or differential pay other than the TCOLA was involved, and

expressly disclaimed any judgment concerning those other premiums. *McQuigg*, 950 F.2d at 597 n.9.  Of course, if an employee earns (non-overtime) premium pay at a higher rate than the TCOLA during the hours worked after the fortieth, the regular rate of pay multiplied by his first forty hours would actually *exceed* his entitled pay for those first forty hours, if no premium but the TCOLA was associated with them.  Second, since the decision ignored other components of the regular rate, it did not embrace a pure marginal approach.  If anything, the opinion implicitly accepted the aggregate approach by identifying the problem as not being that the regular rate calculation assumed that the rate was paid once for hours worked after the fortieth, but rather that it assumed a lower rate of pay for the first forty than the Ninth Circuit believed employees were separately entitled.  *See id.* at 596–97.  As the opinion turned on a peculiarity that uniquely concerned the first forty hours worked, perhaps it is best thought of as employing a reverse-marginal approach.

Finally, and most importantly for our purposes, *McQuigg* found that the USPS was improperly reducing the Alaskan employees' TCOLA payments earned in their first forty hours of work, to the extent that the payments were prorated over more than forty hours.  *Id.* at 597.  Since no other premiums were taken into consideration, this had the effect of lowering the regular rate below where it would have been had the denominator been just forty hours worked.  The amount the Alaskan employees were shortchanged was the difference between forty hours at the base rate plus the TCOLA and forty hours at the regular rate.  This is the mathematical equivalent of the TCOLA portion of the regular rate multiplied by the hours worked in excess of forty.  And the formula adopted and applied by the USPS to the overtime payments of all employees who receive a TCOLA adds this exact amount to the pay of those employees.  *See* Def.'s Mot. Attach. D. at 10, ECF No. 126-4 (formula showing the gross amount added for overtime, or "P," as including the TCOLA for the week divided by hours worked, then multiplied by hours worked in excess of forty); *see also* Def.'s Part. Mot. to Dismiss Ex. 3 at 14–15, ECF No. 19-1 (Mitchell Aff. ¶¶ 12, 17–18).  While it was not clear from the amended complaint whether the plaintiffs were claiming that the USPS was not paying them the TCOLA premium that resulted from *McQuigg*, *see Delpin Aponte*, 83 Fed. Cl. at 86 n.15, the USPS formula for calculating gross overtime payments does include this amount.  Although the payroll records can be maddeningly difficult to decipher, diligent scrutiny of them has revealed that this formula has been followed by the USPS for its employees in Puerto Rico.  As a consequence, plaintiffs' case rests solely on whether the USPS is paying them one and one-half times the regular rate for each overtime hour worked.

## II.  DISCUSSION

Given this background, two issues require resolution: determining how plaintiffs' overtime pay was calculated by the USPS and determining whether this method of calculating overtime complies with the FLSA.  Based upon careful analysis of all the submitted evidence, the Court finds that the USPS calculates overtime by paying one and a one-half times the regular rate for each hour of overtime worked, plus the TCOLA premium, and minus certain creditable premium payments (mainly contractual overtime pay).  This method accords with the statutory requirements (as well as with *McQuigg*).  Additionally, the DOL's interpretation of 29 U.S.C. § 207's overtime pay requirements in 29 C.F.R. Part 778 is entitled substantial weight and is the most reasonable interpretation of the FLSA.  Based on the aforementioned as well as the following analysis, the court **GRANTS** defendant's cross-motion for summary judgment and **DENIES** plaintiffs' motion for partial summary judgment.

### A.  Applicable Legal Standard

Summary judgment shall be granted when "the movement shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed. Cir. 1987); *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 743 (2005).  The Court interprets the facts and inferences "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

Material facts are those "that might affect the outcome of the suit under the governing law."  *Liberty Lobby*, 477 U.S. at 248.  A dispute over facts is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."  *Id.*  To demonstrate a genuine dispute over a material fact, the nonmoving party need not "produce evidence in a form that would be admissible at trial." *Celotex Corp.*, 477 U.S. at 324.  The moving party, however, must either cite to materials in the record which support the assertion that a fact cannot be genuinely disputed, or the movant must show that the materials cited do not establish the absence or presence of a fact.  RCFC 56(c)(1); *see Celotex*, 477 U.S. at 325; *see also Anchor Savings Bank, FSB v. United States*, 59 Fed. Cl. 126, 140 (2003).  In its motion for summary judgment defendant alleges, and needs therefore to substantiate, that it is beyond dispute that plaintiffs cannot demonstrate that the defendant's overtime pay formula violates the FLSA and that defendant has improperly applied their overtime formula.  *See* RCFC 56(c)(1)(B).

-14-

**B. Analysis**

The motions for summary judgment primarily concern the payroll records for one of the plaintiffs, Mr. Jorge Rosario. *See* Pls.' Prop. Findings Ex. 3 (Pls.' Ex. 3), ECF No. 118-3; Pls.' Prop. Findings Ex. 4 (Pls.' Ex. 4), ECF No. 118-4. The plaintiffs argue that these records show that the USPS is not paying them for overtime hours worked at one and one-half times the FLSA regular rate, while the government maintains that is paying more than this amount to the plaintiffs.

### *1. There Is No Genuine Dispute as to Any Material Fact Concerning the Manner in Which Overtime Pay is Calculated by the USPS*

The parties agree that the plaintiffs are or have been employees of the USPS in the Commonwealth of Puerto Rico and that they were entitled to TCOLA as a percentage of their pay up to forty hours of work. Def.'s Prop. Findings of Fact ¶¶ 1–3, ECF No. 20; Pls.' Resp. to Def.'s Prop. Findings ¶¶ 1–3, ECF No. 39. And it cannot be disputed that the FLSA applies to USPS employees in Puerto Rico or that overtime is due to USPS employees who work more than forty hours in one workweek. *See* 29 U.S.C. § 203(e)(2)(B) (2012) (providing that "any individual employed by the United States Postal Service [is an employee under the FLSA]").

Indeed, the material facts in this case are not disputed by the parties. *See, e.g.*, Def.'s Reply at 1–2, ECF No. 146 ("Plaintiffs agree that there are no genuine issues of material fact with respect to Mr. Rosario's pay in that week. Indeed, all of the facts that are necessary to determine whether USPS complies with the FLSA for this example are not in dispute."). Both sides agree that Mr. Rosario was an employee of the United States Postal Service in Puerto Rico during the relevant period; that Mr. Rosario's payroll journal entries accurately record his work and pay; and that Mr. Rosario's payroll journal is representative of all the plaintiffs in the case. *See* Pls.' Prop. Findings of Fact ¶¶ 1, 2, 7, 15, ECF No. 118; Def.'s Resp. to Pls.' Prop. Findings of Fact ¶¶ 1, 2, 7, 15, ECF No. 125. Both sides rely upon Mr. Rosario's payroll journal entries in their respective motions for summary judgment in arguing how FLSA overtime is and should be calculated. *See* Pls.' Mot. at 10–23, ECF No. 117; Def.'s Mot. at 8, 12–18, ECF No. 126. Although the payroll journal was evidently not designed with the goal of being user-friendly, the Court agrees with the parties that Mr. Rosario's payroll journal entries are a suitable basis upon which to determine how the USPS is paying overtime compensation to the plaintiffs and whether this complies with the FLSA.

The plaintiffs initially focus on one particular payroll record for Mr. Rosario, *see* Pls.' Mot. at 10–14, ECF No. 117, as it was one that was discussed at an RCFC 30(b)(6) deposition as well as in reports prepared by each side's purported experts

before the case was transferred from the district court. *See* Pls.' Prop. Findings Ex. 2 (Pls.' Ex. 2) at 4–16, ECF No. 118-2; Pls.' Ex. 5 at 2–3, ECF No. 118-5; Pls.' Prop. Findings Ex. 6 (Pls.' Ex. 6) at 6–8, ECF No. 118-6. This payroll record depicts Mr. Rosario's pay for the sixth pay period of 2000. *See* Pls.' Prop. Findings Ex. 3 (Pls.' Ex. 3), ECF No. 118-3; Def.'s Mot. Attach. D at 6, ECF No. 126-4. For the second week worked that pay period, Mr. Rosario's regular rate of pay was calculated to be $23.545 per hour, and he worked eight FLSA overtime hours.[9] The plaintiffs argue that this record does not show that Mr. Rosario was paid one and one-half times the regular rate, or $282.54, for the eight overtime hours worked, and that the government's RCFC 30(b)(6) deponent conceded that the only entries on the payroll record showing pay for overtime add to just $263.04. Pls.' Mot. at 13–14, ECF No. 117 (citing Pls.' Ex. 2 at 13). The plaintiffs then discuss another seventeen of Mr. Rosario's payroll records, multiplying and adding the same entries that were the topic of the above discussion. *Id.* at 15–23.

In its cross-motion, the government agrees that for the second week of the sixth pay period of 2000, "Mr. Rosario should have received FLSA overtime pay of not less than 1.5 times the regular rate ($23.545) times eight hours, which equals $282.54 (subject to rounding)." Def.'s Mot. at 12, ECF No. 126. It explains that Mr. Rosario was actually paid $12.97 *more* than this amount for those overtime hours, because of the addition of the TCOLA premium and assuming that Mr. Rosario received the regular rate of pay once for each hour worked by definition. *See id.* at 17–18. The government maintains that the plaintiffs misunderstood the various codes and entries of the payroll records, and that as a consequence the RCFC 30(b)(6) deponent was merely asked to add two numbers from the records which do not reflect all of the pay associated with the FLSA overtime hours. *Id.* at 13. The deponent actually testified that part of the overtime pay comes from the contribution of differentials and premium rates to the regular rate. *Id.*; Def.'s Mot. Attach. F at 11–12, ECF No. 126-6. Defendant provides as an exhibit excerpts from the postal service's "Handbook F-18," a "Payroll Journal Guide" dated October 2005, which explain the payroll entries and contain the formula used for calculating overtime pay. Def.'s Mot. Attach. D, ECF No. 126-4. The government explains how this formula is used, and corrects a number of mistakes it contends the plaintiffs have made in their analysis of these records. Def.'s Mot. at 2–3, 8, 11–18, ECF No. 126; Def.'s Mot. Attachs. A–C, ECF Nos. 126-1 to -3.

---

[9] Somewhat counterintuitively, the first week of the two-week pay period is listed below the second week in the payroll journal. *See* Def.'s Mot. Attach. D at 6, ECF No. 126-4 (exhibit showing that the "week of pay period" is denoted by a 1 or 2 and week two is above week one); *Id.* Attach. F at 2, ECF No. 126-6 (RCFC 30(b)(6) deponent agreeing that "Week No. 2" is "the top one").

Although, as we will see shortly, the payroll records take a considerable amount of effort to understand, once this effort is made it is evident that the USPS has been paying its employees for FLSA overtime following the formula provided in the Payroll Journal Guide.  That is, after calculating the regular rate of compensation for hours worked in a week --- a process which is not challenged, *see* Pls.' Mot. at 8, ECF No. 117 --- the USPS ensures that an employee receives one-half of the regular rate for each hour worked above forty (taking into consideration postal overtime premiums paid for that week), and adds to this the TCOLA premium resulting from *McQuigg*.  *See* Def.'s Mot. Attach. D at 10, ECF No. 126-4.  The only issue that must be decided is whether this satisfies the government's obligation under the FLSA.

### *2.  Payroll Records Show Plaintiffs Are Paid FLSA Overtime at One and One-Half Times the Regular Rate Plus a TCOLA Premium*

The payroll records consist of two discrete portions.  The right side of each contains columns showing, for the year and the two-week pay period, the gross pay and payroll deductions for the employee, as well as leave balances.  *See* Pls.' Ex. 3, ECF No. 118-3 (Mr. Rosario's payroll record for sixth pay period of 2000).  For our purposes, the only information that matters from this half of the payroll journals is the TCOLA amount for the pay period.  On the left side of each payroll record are found three columns containing payroll codes, the hours associated for each week of the pay period, and corresponding compensation amounts.  *Id*.  There are also (when applicable) two rows containing some of the results of the FLSA overtime formulas, ending with the number of hours worked and the net amount added to the pay for that week's FLSA overtime (including the TCOLA premium).  *Id*.  The left side is the relevant portion of the journals.

In addition to the use of the payroll codes, several aspects of the left-hand side of the payroll journals can be confusing.  For one thing, there is no break in the columns between the second and the first week of the pay period, so the total hours worked and net FLSA amount for the former is immediately followed by the first payroll code and associated information for the latter.  Another odd feature is that the hours identified for some types of premium pay and differentials (such as the night differential and Sunday premium) are duplicative of hours already listed at the basic rate or at the postal overtime rate.  The payroll codes for working hours most commonly featured in Mr. Rosario's records are 52, 53, 54, and 72.  *See id.*[10]  The Payroll Journal Guide explains that these categories mean: 52, work hours; 53,

---

[10]  Some codes correspond to leave time, such as annual leave (55), sick leave (56), and union official leave (84).  These are not relevant for our purposes.

overtime hours (at 150% of the basic rate); 54, night work premium; and 72, Sunday premium.  Def.'s Mot. Attach. D at 9–10, ECF No. 126-4.

The use of a code for "overtime" has proved confusing to plaintiffs and, at times, the Court.  The hours associated with this code are not necessarily equivalent to the number of hours worked above forty, for FLSA purposes.  Code 53, for "postal overtime" under USPS policy, in addition to referring to *some* hours worked over forty in a week, also encompasses hours worked in excess of eight in one day and hours worked by union members on a nonscheduled day.  *See* USPS Employee and Labor Relations Manual (ELM) § 434.131.[11]  Some hours worked in excess of forty might fall in another category, "penalty overtime" (code 43), at twice the basic rate for certain "hours described in applicable labor agreements." ELM § 434.133.  Thus, the code 53 hours might be greater or lesser than the number of hours in excess of forty worked in a week.  *See, e.g.*, Pls.' Ex. 4 at 95, ECF No. 118-4 (pay period 15 of 2004, week one, showing 10.01 hours of postal overtime and only 0.01 hours of FLSA overtime); *id.* at 60 (pay period 23 of 2005, week two, showing 8 hours of postal overtime, 2 hours of penalty overtime, and 10 hours of FLSA overtime).

When more than forty hours are worked in a week, a row of figures on the payroll journal depicts six numbers resulting from the various equations used to calculate the net amount added to meet the FLSA requirements.  *See* Def.'s Mot. Attach. D at 8, ECF No. 126-4.  The Payroll Journal Guide explains these figures.  Starting on the left, next to the letter "B" is the total remuneration in the week that is relevant for calculating the regular rate.  For our purposes, this  sum is made up of the compensation paid for working all hours other than postal overtime, at the basic rate of pay (code 52); one-half of the compensation for penalty overtime (code 43) and two-thirds of the compensation for postal overtime (code 53), which reduces those hours down to the basic rate of pay; the night differential (code 54) and Sunday premium (code 72) amounts  earned that week, since each premium is below fifty percent and thus not excludible under 29 U.S.C. § 207(e)(6)–(7); and the portion of the TCOLA attributable to hours worked that week.  *See* Def.'s Mot. Attach. D at 10, ECF No. 126-4.  To the right of that figure, following the letter "R," is the regular rate for the week, which is the FLSA remuneration divided by the total number of hours worked.  *Id.* at 8, 10.

Next in the row is the FLSA premium amount, following the letter "P."  This number is the result of taking one-half of the regular rate multiplied by the number

[11]  Because the premium is fifty percent for these hours, the premiums associated with working nonscheduled days are still excluded from the regular pay calculation and creditable toward the FLSA overtime payments, under 29 U.S.C. § 207(e)(7) and (h)(2).

of hours worked in excess of forty, and adding to it the following:  the weekly TCOLA amount divided by hours worked and then multiplied by the number of hours worked in excess of forty (i.e., the *McQuigg* FLSA premium).  *Id*.  To the right of the letter "C" is the amount of compensation that was excluded from the regular rate calculation and creditable toward FLSA overtime, mainly the fifty percent premium for postal overtime (code 53) and the one hundred percent premium for penalty overtime (code 43).  *Id*.[12]  When the FLSA premium amount ("P") is greater than the credited amount ("C"), the difference is added to the column of compensation for the week.  *Id*.  To the left of this figure, in the hours column, is the total hours worked for that week.  *Id*.

Armed with this knowledge, we can now profitably scrutinize the payroll records that are the subject of the pending motions, beginning with pay period six of the year 2000.  *See* Pls.' Ex. 3, ECF No. 118-3.  Looking at week two, total FLSA remuneration is portrayed as $1,130.17.  This is exactly equal to the sum of the compensation received for code 52 hours ($779.36), two-thirds of the compensation for code 53 postal overtime hours (2/3 x $233.81 = $155.87), the code 54 night differential ($78.03), the code 72 Sunday premium ($38.97), and the TCOLA received for working that week (this is the total pay period TCOLA of $155.88, divided by the pay period code 52 hours and paid leave hours (up to forty per week), multiplied by the code 52 hours for the week, *see* Def.'s Mot. Attach. D at 10, ECF No. 126-4, or $155.88 ÷ 80 x 40 = $77.94).  The regular rate is depicted as $23.54, which is $1,130.17 divided by total hours worked (code 52 hours plus code 53 hours, or 48).  The FLSA premium number is shown to be $107.15.  This is equal to one-half of the regular rate times the hours worked in excess of forty (.5 x $23.54 x 8 = $94.16) plus the *McQuigg* TCOLA premium (the TCOLA for the week, $77.94, divided by 48 hours worked and multiplied by the 8 hours of FLSA overtime, or $77.94 ÷ 48 x 8 = $12.99).  The creditable amount for that week, the one-third of the postal overtime pay excluded from the regular rate calculation, was correctly identified as $77.94 (as 1/3 x $233.81 = $77.94).  The difference between the FLSA premium calculation ($107.15) and the creditable amount ($77.94) is $29.21, which is exactly the amount added to Mr. Rosario's pay.  *See* Pls.' Ex. 3, ECF No. 118-3.  The USPS paid him just as it claimed, following the formula in the Payroll Journal Guide.  *See* Def.'s Mot. Attach. D at 10, ECF No. 126-4.

A review of the other payroll journals confirms that this formula has been consistently and accurately followed by the USPS.  To take one random example of

---

[12]  Other premiums, such as holiday scheduling and Christmas work, are also excluded from the regular rate (because they were at least fifty percent of the base rate) and creditable towards FLSA overtime payments.  *See* Def.'s Mot. Attach. D at 10, ECF No. 126-4.

the payroll records highlighted by the plaintiffs, in week one of pay period 26 from
the year 2005, Mr. Rosario worked 5.97 hours of FLSA overtime. *See* Pls.' Ex. 4 at
57, ECF No. 118-4. The FLSA remuneration of $1362.57 is precisely the sum of code
52 pay ($951.58), two-thirds of code 53 pay (2/3 x $213.03 = $142.02), the code 54
night differential ($64.38), the code 72 Sunday premium ($95.16), and the TCOLA
allocated to that workweek ($218.86 ÷ 80 x 40 = $109.43). The remuneration divided
by hours worked (45.97) yields the regular rate of $29.64. One-half of the regular
rate multiplied by the hours worked in excess of forty is $88.48 (.5 x $29.64 x 5.97),
and for that week, the TCOLA premium was $14.21 ($109.43 ÷ 45.97 x 5.97); adding
these two numbers results in the FLSA premium of $102.69. The creditable amount
for the week, one-third of the code 53 postal overtime, was $71.01 (1/3 x $213.03).
The difference between the FLSA premium calculation ($102.69) and the creditable
amount ($71.01) is $31.68, which is exactly the amount added to Mr. Rosario's pay.
*Id.*

By following the formula, the USPS compensated Mr. Rosario in the manner
that OPM and DOL prescribes for FLSA overtime payments, and added the *McQuigg*
amount for good measure. Leaving aside the *McQuigg* TCOLA premium (which is
clearly added to plaintiffs' pay and is no longer at issue in this case), the plaintiffs
argue that this method of determining FLSA overtime compensation violates the
plain language of the FLSA overtime provision, which states that compensation
must be received "at a rate not less than one and one-half times the regular rate" for
the number of hours worked in excess of forty in a week. 29 U.S.C. § 207(a)(1)
(2012); *see* Pls.' Mot. at 6–7, ECF No. 117. Despite the extended discussion the
aggregate approach in the Court's earlier opinion, *see Delpin Aponte*, 83 Fed. Cl. at
82–85, 91, and the government's discussion of the precedents approving of this
approach, including the Supreme Court's *Bay Ridge* opinion, *see* Def.'s Mot. at 9–11,
ECF No. 126, the plaintiffs refuse to discuss the precedents or even acknowledge the
aggregate approach's existence. *See* Pls.' Mot. at 1–24, ECF No. 117; Pls.' Reply at
1–25, ECF No. 143. Instead, the plaintiffs insist this is just a simple question of
mathematics. Their case rests on three things: the absence of any entry on the
payroll journal stating that the regular rate of pay was received for each hour
worked above forty, *see* Pls.' Mot. at 11–2, ECF No. 117; their contention that a
formula which assumes that overtime hours were worked at the basic rate of pay
cannot meet the FLSA mandate, *see* Pls.' Reply at 21–24, ECF No. 143; and the
claim that the government's RCFC 30(b)(6) witness conceded that Mr. Rosario was
not paid the proper amount, *see* Pls.' Mot. at 14, ECF No. 117.

Taking the first and third points together, as they are related, the Court fails
to see how the absence of a line item on the payroll journal showing the product of
the regular rate of pay and the FLSA overtime hours has any bearing on this case.
To be sure, the payroll journals are quite difficult to understand at first glance, but

the plaintiffs do not quarrel with the regular rate of pay calculation, *see* Pls.' Mot. at 8, ECF No. 117, and the purpose of calculating this figure is to determine the average rate of pay received for every hour worked. By deriving the regular rate, the USPS is calculating the effective rate of pay for every hour worked, including the ones in excess of forty. And each source or category of compensation that was included among total remuneration for purposes of the regular rate can be said to have contributed to the pay received for each hour worked, as this total amount is divided by the total number of hours worked. Far from conceding that the USPS did not pay Mr. Rosario the proper amount for FLSA overtime, the government's RCFC 30(b)(6) witness explained that the payroll journal did not directly show how he received the regular rate of pay for each hour of FLSA overtime, as plaintiffs' counsel was "neglecting to take into consideration the fact that we've already paid the Sunday premium, the TCOLA, and the night differential in the normal rate." Def.'s Mot. Attach. F at 12, ECF No. 126-6; *see also id.* at 6 (explaining that adding postal overtime to the net FLSA premium amount does not result in total compensation paid for FLSA overtime because of the absence of the contribution of "[n]ight differential, Sunday premium, [and] TCOLA").

The plaintiffs' case is thus reduced to the contention that the USPS cannot have paid them the "one" part of the "one and one-half times the regular rate" by calculating the regular rate as defendant did. To this the Court now turns.

### *3. The USPS is Following the Most Reasonable Interpretation of the FLSA in Adding One-Half Times the Regular Rate of Pay to Compensation Included in the Regular Rate Calculation*

The plaintiffs argue that the USPS approach to calculating overtime compensation owed them does not comply with the FLSA. They focus on the fact that, in calculating the regular rate, the USPS starts with a category of compensation for postal overtime that is paid at one and one-half times their basic rates of pay, and then excludes the premium part, leaving just the basic rate for each of these hours. *See* Pls.' Reply at 4, 17–24, ECF No. 143. They do not dispute the way the regular rate is calculated, or that the excluded amount is topped up (by $P - C$) to satisfy the one-half times the regular rate portion of overtime pay (as well as the TCOLA premium). *See* Pls.' Supp'l Br. at 3, ECF No. 161; *see also* Pls.' Mot. at 4, 8, ECF No. 117.

Of course, removing the premium rate portion of *any* overtime (daily or weekly) when an employer calculates the regular rate is explicitly required by the FLSA. *See* 29 U.S.C. § 207(e)(5). As was explained above, by basing overtime compensation on an average rate of pay for all hours worked, and allowing certain premiums to count toward satisfying overtime compensation without regard for

whether the premiums were associated with hours worked after the fortieth, the FLSA adopts an aggregate approach toward overtime compensation. *See* 29 U.S.C. § 207(a)(1), (e), (h)(2). The plaintiffs, by trying to link the one-times the regular rate portion with the pay earned for particular hours worked, seem to be attempting to mix in a sort of marginal approach.

But this approach to FLSA overtime compensation does not make sense, for it assumes something that is plainly not true --- that employees *always* receive *only* one and one-half times the basic rate of pay (or two times if penalty overtime was involved) for hours worked after the fortieth in a week. This error can be clearly seen by looking at Mr. Rosario's payroll journal for the sixth pay period of year 2000. *See* Pls.' Ex. 3, ECF No. 118-3. In week two, he worked 48 hours --- and 47.87 of them earned him a night differential of about 8.4% on top of the basic rate of pay. *See id*. Thus, at least 7.87 of the 8 hours worked after the fortieth were compensated at above the postal overtime rate. In addition, 8 hours of work earned the Sunday premium, which is 25% on top of the basic rate. *Id.* Although one cannot tell from the payroll journal if Mr. Rosario's workweek ended on a Sunday, if it did, this premium would have been earned during the 8 hours worked after the fortieth, as well. Thus, even after removing the postal overtime premium from the pay associated with hours forty-one through forty-eight, it may well be the case that Mr. Rosario was paid more than 33% above the basic rate of pay for each of those hours, much higher than his regular rate for the week ($25.98 as opposed to $23.54). The same was true for his first week of the pay period, in which all 46.25 hours worked earned a night differential, and 8 hours were worked on a Sunday. *Id.* But plaintiffs ignore these other premiums in their analysis of this pay period. *See* Pls.' Mot. at 12–13, ECF No. 117; Pls.' Reply at 19–20, ECF No. 143.

The plaintiffs' approach, then, is not based on the compensation associated with particular hours worked after the fortieth, and is not designed to determine whether the pay received for those hours was at least equal to the regular rate of compensation for the week. The plaintiffs want to rewrite the FLSA overtime provision to require compensation for their employment in excess of forty hours "at a rate not less than one and one-half times the regular rate, in addition to all other premiums or differentials earned for working those hours that are not based on the hours being overtime ones." Such a revision is rather ambitious, and no support for such an interpretation was initially offered by the plaintiffs. One supposes that a complicated textual argument could be crafted around section 207(h), which states that "sums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward . . . overtime compensation" except for the "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section." 29 U.S.C. § 207(h)(1)–(2) (2012). But one cannot confidently base the treatment of sums *included* in the regular rate on what is said about those sums *excluded* from it. In

-22-

any event, under the plaintiffs' approach it cannot be the case that any compensation that was included in the regular rate could not satisfy any portion of overtime compensation owed under the FLSA, as they would include the part of the postal overtime that is left over after being stripped of the overtime premium, which is included in the regular rate under 29 U.S.C. § 207(e)(5).

But no legal argument was initially offered by the plaintiffs in support of their position --- not even an attempt to extend the holding of *McQuigg*, which is not at all mentioned in their papers.  Of course, since *McQuigg* rested on the notion that the TCOLA could not be earned for hours worked above forty, *see McQuigg*, 950 F.2d at 596–97, the reasoning could hardly be employed to premiums such as the night differential which, as we have seen, clearly is earned during those hours.  *See* Pls.' Ex. 3, ECF No. 118-3.  It was not until the Court asked about the applicability of 29 C.F.R. § 778.207(a) that plaintiffs made any sort of legal justification for their position.  *See* Pls.' Supp'l Br. at 3, ECF No. 161.[13]  But a close review of the DOL rules shows that the Court was mistaken in focusing on this provision, which says of premiums included in the regular rate: "Wherever such other premiums are paid, they must be included in the employee's regular rate before statutory overtime compensation is computed; *no part of such premiums may be credited toward statutory overtime pay*."  29 C.F.R. § 778.207(a) (2013) (emphasis added).  While it is somewhat obscured by the DOL's failure to include any premium rates in their examples, it is evident that the phrase "credited toward statutory overtime pay" is a reference to satisfying the additional one-half times the regular rate of pay portion of FLSA overtime pay.  *See* 29 C.F.R. § 778.311(a)–(b).[14]

The approach to calculating FLSA overtime payments employed by the USPS follows the rules issued by DOL which, as we have seen, merely require adding one-half times the regular rate of pay for the number of overtime hours worked in a

---

[13]  The plaintiffs' argument, such as it is, consists of merely quoting from 29 C.F.R. § 778.207(a), *see* Pls.' Supp'l Br. at 3, ECF No. 161, and this unexplained statement included in an exhibit: "If the USPS is in fact using any portion of the Night and/or Sunday premiums to 'credit' towards OT pay, it is doing so in clear violation of FLSA."  Pls.' Supp'l Br. Ex. (Pls.' Ex. 10), ECF No. 161-1.

[14]  In this rule, after it was explained that "no part of" a certain "amount may be credited toward statutory overtime compensation due," 29 C.F.R. § 778.311(a), the illustrative example shows that this amount is counted in the regular rate to satisfy the "one" part of one and one-half times the regular rate, 29 C.F.R. § 778.311(b)(3). The example makes clear that when DOL speaks of crediting amounts toward FLSA overtime, this is a reference to the additional one-half times the regular rate, which it calls the "statutory overtime premiums."  *Id*.

week, once the regular rate has been accurately calculated. *See, e.g.*, 29 C.F.R. §§ 778.110(b), 778.111, 778.112, 778.118, 778.311, 778.313(b). This is consistent with the aggregate approach followed in the FLSA, which bases overtime pay not on the rate at which an hour would otherwise have been paid were it not overtime, but instead employs an average rate for purposes of this pay, and allows compensation associated with non-overtime hours to satisfy overtime pay requirements. *See* 29 U.S.C. § 207(a), (e), (h). And while the government recognizes that the DOL's interpretative rules may not be entitled to the deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), *see* Def.'s Supp'l Br. at 9–13, ECF No. 158, the Court gives them considerable weight according to the factors identified in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944). *See United States v. Mead*, 533 U.S. 218, 234–38 (2001). The Department of Labor without question possesses considerable expertise in the area of labor law. *See Aluminum Co. of Am. v. Cent. Lincoln Peoples' Util. Dist.,* 467 U.S. 380, 390 (1984) (considering "expertise in the area" to be a significant factor in evaluating deference due). Not only has DOL apparently been consistent in its interpretation of the FLSA overtime pay requirements, *see Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 417 (1993) (explaining that "the consistency of an agency's position is a factor in assessing the weight that position is due"), but this interpretation has been longstanding, *see Alaska Dept. of Evn't. Cons. v. E.P.A.*, 540 U.S. 461, 487 (2004) (giving deference to the EPA's "longstanding, consistently maintained interpretation"), as it was discussed (with approval) by the Supreme Court as far back as in 1948. *See Bay Ridge*, 334 U.S. at 476–77. Moreover, as was noted above, the amendments to the FLSA overtime provisions enacted by Congress in the years following *Bay Ridge* have been consistent with the aggregate approach reflected in that decision, and we must presume that Congress was aware of that interpretation. *See Doe v. United States*, 100 F.3d 1576, 1581 (Fed. Cir. 1996).

The Court concludes that the approach followed by the USPS, and prescribed by DOL --- adding compensation equal to one-half of the regular rate of pay for each hour worked above forty, to the compensation used to calculate the regular rate --- is the most reasonable interpretation of the requirements of 29 U.S.C. § 207(a)(1). As it is beyond dispute, based on the payroll records submitted by the parties, that this approach was in fact followed by the USPS in calculating the plaintiffs' overtime pay, the Court **GRANTS** defendant's motion for summary judgment and **DENIES** the plaintiffs' motion for partial summary judgment.

## III. CONCLUSION

For the foregoing reasons, the plaintiffs' motion for partial summary judgment is **DENIED,** and defendant's motion for summary judgment is **GRANTED**. The

plaintiffs' pending motion for class certification is **DENIED-AS-MOOT**.  The Clerk shall enter judgment accordingly.


**IT IS SO ORDERED.**


s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge